MARTIN BROWN *v.* ALLEN L. BURRINGTON AND LEWIS COLLINS *Trustee.*

*Landlord and Tenant. Repairs. Custom. Trustee. Husband and Wife. Evidence.*

Where a man takes a farm at the halves, and the landlord agrees to put a yoke of oxen upon it to do the farm work, and the tenant furnishes half their keeping and takes care of them, he should be allowed for half their use when at work on the farm for the exclusive benefit of the landlord.

So where the tenant worked with the oxen off of the farm, the earnings of the oxen should be divided.

Where the oxen were sold with the consent and for the mutual benefit of both landlord and tenant, it was no waiver of the original stipulation that the landlord should find a team to do the work.

Necessary repairs which are of a permanent character, whose value and use extend beyond the year, and inure mainly to the benefit of the landlord, cannot be made upon the farm by the tenant at the expense of the landlord, without the landlord's express consent and authority.

Where a tenant at the halves agrees to find stock for the consumption of the hay *on the place,* he will be liable on breach of contract for carrying it away, though not in tort.

Brown *v.* Burrington and Trustee.

Where a tenant at the halves and his landlord mutually consent to sell a piece of standing grass, by consenting to sell it the landlord consents to waive the benefit he would derive from the tenant's labor in cutting it.

As by custom, where a tenant occupies a farm at the halves, the landlord is entitled to half the sugar, only when he furnishes the necessary utensils of sugar making; if the tenant furnishes them the landlord will be allowed only what the use of the sugar place and trees are worth.

In a case when the landlord and tenant are trustee and principal defendant respectively, though the principal defendant is defaulted, the policy of the law in this state would exclude his wife from testifying in the suit against the trustee, when the inquiries would pertain to the dealings between the husband as tenant, and the trustee as landlord.

TRUSTEE PROCESS. The principal defendant was defaulted, and Abishai Stoddard, Esq., was appointed commissioner to take the disclosure of the trustee.

It appeared from the report of the commissioner that the principal defendant, Burrington, carried on the farm of· the supposed trustee, Lewis Collins, at the halves. The letting was in accordance with the usual custom of letting farms at the halves. The manner of dividing the products was not specified, except that each party was to find stock for his share of the pasture, and for the consumption of the hay and other fodder raised upon the premises. Collins was to find a yoke of oxen to do the work upon the farm, and they were to be kept thereon from the pro-duce thereof. When Burrington worked the oxen on the farm for the exclusive benefit of Collins, he charged for the use of them, as he did for his own work while so working the oxen. He also charged for their earnings when he worked the oxen off of the farm for others. In August, by the consent of Burring-ton, and at his request, the oxen were sold and taken off from the farm, and no team was afterwards furnished by Collins. It appeared that it was for the mutual benefit of Burrington and Collins to have the oxen sold. After the oxen were sold, as Collins did not furnish a team to do the farm work, Burrington hired a team for this purpose, and charged Collins for the same. Burrington also charged Collins for four pounds of nails which

he had purchased and used upon the premises for necessary repairs, without any authority of Collins.

It appeared in reference to one item, which was a charge for 100 pounds of sugar, that Burrington procured buckets, storage and boiling pans, and all necessary apparatus for tapping trees and making sugar, and in the spring of 1859 tapped nearly 100 trees and made 160 pounds of sugar from the premises leased. There was no contract in reference to this sugar place, other than that embraced in the general contract of letting the farm at the halves. It is customary when sugar lots are leased at the halves for the lessor to furnish the necessary utensils. The commissioner found that the use of the sugar place and trees was worth $3.60.

When Burrington moved off from the farm he carried away two and one-half tons of hay, which was charged to him by Collins. It further appeared that Burrington proposed to Collins to sell a piece of standing grass, to which Collins consented. Burrington claimed that one-half the proceeds belonged to him.

In the course of the hearing the plaintiff offered the wife of Burrington as a witness. The counsel for Collins objected, on the ground that she was incompetent, being the wife of a party to the suit. The commissioner overruled the objection, and allowed her to testify.

The county court, at the September Term, 1860, REDFIELD, CH. J., presiding, rendered judgment *pro forma*, discharging the trustee, to which the plaintiff excepted.

*Charles H. Davenport*, for the plaintiff, cited as to the admission of the testimony of the wife of the principal defendant, *R. & B. R. R. Co.* v. *Lincoln's Est.*, 29 Vt. 206 ; *Smith* v. *Potter*, 27 Vt. 300 ; *Miller* v. *Williams et Tr.*, 30 Vt. 386.

*H. N. Hix*, for the trustee, cited upon the same point, Green. Ev. vol. 1, p. 442, §§ 334–5 ; *Carr* v. *Cornell*, 4 Vt. 116 ; *Sergeant* v. *Seward*, 31 Vt. 509 ; *Commonwealth* v. *Marsh*, 10 Pick. 57 ; 2 Kent. Com. 179–180.

ALDIS, J. Burrington took a farm of Collins at the halves. Collins was to put upon it a yoke of oxen to do the farm work.

1. Burrington used the oxen on the farm for the exclusive benefit of his landlord. While so in use the landlord claims, that Burrington should not be entitled to half the value of their use, but that he (the landlord) should have their use for nothing. This claim does not appear to us to be just. The tenant had to furnish half of their keeping, and to take care of them. As there was no stipulation as to their use by the landlord, he could not require them to be used for his benefit. The tenant had a right to have them at work where he could receive a share of their earnings. In the absence of a stipulation as to the terms on which they might be used for the sole benefit of the landlord, we think he should allow the tenant for one-half of their use.

2. So, where the tenant worked with the oxen off of the farm, for the same reasons, the earnings of the oxen should be divided.

3. During the year,—in August,—the landlord and tenant agreed that the oxen should be sold;—it being for the benefit of both. After that Collins furnished no team to do the work. Team work becoming necessary, the tenant hired a team to do it, and paid for it, and has charged what he paid to Collins. They made no agreement when they sold the oxen as to how the team work should be done, and who should furnish it. As the sale of the oxen was with the consent and for the mutual benefit of both, we think it can not be deemed a waiver of the original stipulation that Collins should find a team to do the work. The fair inference is that Collins was to continue to furnish the team work for the farm when necessary;—and that he took this into consideration in determining whether it would be best to sell the oxen.

4. The tenant paid twenty cents for four pounds of nails, which he used for necessary repairs, without any authority from his landlord. The charge is for so small a sum that it deserves no attention if it were not that the allowance of it might be deemed a sanction of the principle that a tenant can make neces-

Brown v. Burrington and Trustee.

sary repairs on a farm without the authority of the landlord and at his expense. Necessary repairs which are of a permanent character—whose value and use extend beyond the year, and inure mainly to the benefit of the landlord—can not be made upon the farm by the tenant at the expense of the landlord without the landlord's express consent and authority. Otherwise landlords might find their whole rent exhausted by necessary repairs, or as an English Judge expresses it when speaking of allowances for " reasonable improvements," so called, " gentlemen might be improved out of their estates." The owner of the farm has a right to determine whether repairs of this character shall be made or not—to what extent and at what price ;—the lease can not be deemed to delegate such an authority to the tenant. The tenant before taking the lease can examine the premises and decide for himself whether he can stay with his family through the term and can protect his crops without repairs other than such as he can afford to make ; and can stipulate for necessary repairs or refuse to take the lease.

We do not say, however, that necessary repairs may not be made by the tenant at the expense of the landlord and without his consent, where a sudden and unlooked for emergency requires it, and the expense is necessary to save the crops, or otherwise protect their common interests, and when the landlord can not be consulted, and the expense is reasonable. But such cases are exceptional. As nothing is said in the report to show that this charge belongs to this class, it must fall within the general rule and be disallowed,

5. The tenant was to occupy the farm according to the usual custom of such tenancies. The sugar orchard and its products should be governed by such custom. As by custom the landlord is entitled to half the sugar only when he furnishes the necessary utensils of sugar making, the commissioner in this case properly allowed him only what the sugar place and trees were worth.

6. Burrington was bound by the agreement to find stock for the consumption of the hay on the place. It was an important stipulation for the lessor, and conducive to good husbandry. The

tenant did not feed out the hay on the place, but carried away two and one-half tons- He thus broke his contract, and the landlord may recover his damages for such breach, and we think that they are properly allowable here. It is not a tort, but a breach of contract, for which the $3.00 was allowed.

7. The piece of standing grass was sold by consent of both landlord and tenant. Each, before it was cut, was entitled to half of it. By consenting to sell it the landlord consented to waive the benefit he would have derived from the tenant's labor in cutting it. The commissioner erred in treating it as belonging wholly to the landlord. The credit of $1.00 to Collins by Niles appears to have gone to his benefit.

8. The main question in the case is, was the wife of the principal debtor admissible as a witness against the trustee? The commissioner admitted her to testify, and upon her evidence alone allowed several items against the trustee, and disallowed several items which he claimed.

The reasons for excluding married women from testifying for or against their husbands have been, first, that their husbands were interested in the matters to which they might testify, and secondly, that good policy required that the intimacy and harmony of married life should not be invaded or jeopardized by requiring the wife to be examined and cross-examined as to matters affecting the husband's interests or business. After the statute was enacted in this state allowing persons who were interested to testify, our courts still held that though the husband was not disqualified on account of his interest in the suit from testifying, still the policy of the law would exclude the wife. *Manchester* v. *Manchester*, 24 Vt. 649 ; *Smith* v. *Potter*, 27 Vt. 308 ; 31 Vt. 509. Our more recent legislation in specifying particular cases in which the wife may testify for the husband assumes by implication that in other cases she may not.

In the case at bar the inquiries pertained to the dealings between the husband as tenant and the trustee as landlord. They were inquiries which, if pursued, would lead to an investigation of the husband's conduct and management of the farm,—of spe-

cial contracts in regard to such management, and almost by inevitable consequence to his declarations as well as to his acts. It is plain to us that the examination and cross-examination of the wife upon such points would trench upon the policy of the law.

Nor are we prepared to say that the husband, though only the principal debtor and defaulted, might not be interested in the judgment to be rendered upon the trustee's liabilities to him.

Upon the ground of policy alone, we think she should have been excluded.

Allowing and disallowing items upon the basis we have thus indicated, the balance due from the trustee is only $3.22, and this being less than the sum of $10 for which he can be adjudged liable, the judgment of the county court is affirmed.